Henry W. Lengyel, J.
These claims for indemnification and reimbursement were joined for trial purposes by order of Judge Sidney Squire dated April 4, 1975. I shall render one decision upon which separate judgments may be entered.
The second paragraph of Claim No. 57264 stated: "This claim is for indemnification and reimbursement for a Judgment rendered against Berlin & Jones, Inc. in the sum of * * * $480,000.00 * * * which was reduced to the sum of * * * $380,000.00 * * * by the Court. A copy of said Judgment entered in the Supreme Court, New York on October 31, 1972 is attached hereto * * *.” It should be noted that in the Supreme Court action the corporate defendant was entitled Burlin & Jones, Inc., whereas in this action as claimant it was entitled Berlin & Jones, Inc. It appealed the Supreme Court judgment which was affirmed by a divided court in Lyons v Burlin & Jones (43 AD2d 528). The appellate determination was affirmed without opinion by the Court of Appeals (34 *972 NY2d 896). The judgment of October 31, 1972 was paid in full on or about August 6, 1974.
The second paragraph of Claim No. 57769 stated: "This claim is for indemnification and reimbursement in the amount of * * * $106,200.00 * * *; said sum having been paid by claimants in settlement of an action entitled "Berger et al vs. Burlin & Jones, Inc. et al” in the Supreme Court, New York County. The aforementioned settlement was effected on October 24, 1972 and payment of same was made on or about November 17, 1972.”
The Supreme Court actions arose out of a three-car collision which occurred on February 18, 1969. The most seriously injured party was Frank A. Lyons, the driver of a westbound vehicle. The principal defendants were Jerome H. Lyons (no relation), the driver of an eastbound vehicle, and his employer, Berlin & Jones, Inc. The trial of these multiple personal injury and property damage cases occupied 11 trial days between October 10 and 25, 1972.
The Berlin claim (Claim No. 57264) was filed with the Clerk of the Court of Claims and served upon the Attorney-General on January 15, 1973.
A notice of intention to file a claim was filed with the Clerk of the Court of Claims on January 12, 1973, and served upon the Attorney-General on January 15, 1973. The claim, which related to said notice of intention, was filed with the Clerk of the Court of Claims on August 20, 1973 and was served upon the Attorney-General on August 17, 1973. That claim was designated Claim No. 57769.
At the close of the trial in the Court of Claims, the Assistant Attorney-General moved, among other grounds, to dismiss both of these claims as being jurisdictionally defective because of untimely filing. I reserved decision.
As the accident which generated all of this litigation occurred prior to March 22, 1972, the effective date of Dole v Dow Chem. Co. (30 NY2d 143), the State contended that claimants were required to file and serve a notice of intention or claim on or before September 22, 1972; or, within six months of the Dole effective date. Basically, it was the State’s position that the contribution claim which stems from a core action accrues on the day of injury.
The Assistant Attorney-General conceded for purposes of argument in these claims that subdivision 4 of section 10 of *973 the Court of Claims Act was the controlling jurisdictional time-limitation statute. His concession was in accord with several Court of Claims decisions on this point. (See O’Sullivan v State of New York, 83 Misc 2d 426; Leibowitz v State of New York, 82 Misc 2d 424; Bay Ridge Air Rights v State of New York, Claim No. 59365, filed Dec. 18, 1975; and Relyea v State of New York, Claim No. 57973, filed Jan. 9, 1976.)
I agree on this point with my colleagues. I hold that claimants herein had six months from the date their claims accrued in which to file and serve a notice of intention or claim. Of course, if claimants followed the notice of intention route, they were required to serve and file a claim within two years after the date of accrual. (See Court of Claims Act, § 10, subd 4; § 11.)
The difficult and vexatious question is, when did the contribution claims at bar accrue?
If contribution or partial indemnity claims accrue on the date of the tort from which they stem, I must dismiss these pre-Dole claims. (See Leibowitz v State of New York, 82 Misc 2d 424, supra.)
If such claims accrue on the date of entry of judgment in the primary action, then I must deny the State’s motion to dismiss. (See O’Sullivan v State of New York, 83 Misc 2d 426, supra.)
There is, however, a third alternative, namely, that claims seeking contribution from a joint tortfeasor in a separate and independent action which stems from a core action, do not accrue until payment has been made, either under settlements effected between March 22, 1972 and September 1, 1974 (See Codling v Paglia, 32 NY2d 330, 344; General Obligations Law, § 15-108, subd [c]; cf. Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34) or, under judgments entered in the primary action. I am in accord with the third alternative.
I have carefully read the thoughtful and well-reasoned decisions which held that the date of the original tort controlled the starting or trigger date for the Statute of Limitations in contribution or partial indemnity actions. I have not been persuaded by those decisions. I noted that, although the Federal courts apply the Federal two-year tort statute to contribution claims, the statute does not commence to run until the date of payment after judgment in the primary action. In United States Lines v United States (470 F2d 487, *974 489) it was written: "Provided there exists a right to contribution or indemnity, the applicable two-year statute of limitations (28 U.S.C.A. § 2401 (b)) does not run from the date of injury but from the time the right to contribution or indemnity accrued, namely, date of payment * * *. See 54 C.J.S. Limitations of Actions § 160; Kantlehner v. United States, D.C., 279 F. Supp. 122; Keleket X-Ray Corporation v. United States, 107 U.S. App. D. C. 138, 275 F. 2d 167; States Steamship Company v. American Smelting & Refining Company, 339 F. 2d 66 (9 Cir.).” To hold otherwise could deprive many claimants of an opportunity to seek contribution from the State. Admittedly, under Atlantic Mut. Ins. Co. v State of New York (50 AD2d 356, 357, 358) it was held that a claimant” may prospectively file an effective notice of intention to file a claim under the provisions of section 10 of the Court of Claims Act and thereby preserve its status as a claimant in an action against the State in the event a workmen’s compensation recipient fails to timely commence such an action” and, that "a prospective claimant may file to preserve its rights before it becomes endowed with the official status of a claimant.” (See, also, Matter of Johnson v State of New York, 49 AD2d 136, 138, 139; City of New York v State of New York, 49 AD2d 661, 663.) However, I cannot believe the appellate courts would apply the prospective filing rule to preserve an application of the day of injury theory in contribution or partial indemnity claims. Such an application could give rise to illogical and unreasonable results. Assume that "A” and the State were joint tortfeasors in a motor vehicle collision and "B” was the injured party. "B” of course has, under normal circumstances, 90 days in which to sue the State (Court of Claims Act, § 10, subd 3) and three years in which to sue "A”. (CPLR 214.) Let us further assume that "B” neglects to sue the State within 90 days and that his claim is time-barred. Under the date of injury theory propounded by the State in the claims at bar, "A” might be forced to sue the State for contribution before he was sued by "B” in the Supreme Court, an anomalous situation; "A” might be forced to make admissions (the suit itself might be considered an admission) in his prospective suit against the State; or,. "A” might be forced to sue the State and then wait a portion or all of the three years of the Statute of Limitations (CPLR 214) plus the preparation, calendar, trial, and appeal time of the main action before his claim could be prosecuted, and the court would have to calendar "A’s” case for that period. A situation analogous to *975 this last example was considered in States Steamship Co. v American Smelting & Refining Co. (339 F2d 66, 70) "Appellant urges that a procedure could be employed that would allow a suit to be filed in such a case at the time of delivery, and then stayed until determination of the amount of the award and payment thereof. To impose such a burden upon the claimant to anticipate at the time of delivery the nature and extent of his [indemnity] claim for damages, and to impose a burden upon the courts to indulge in this staying procedure, cannot be said to have been within the reasonable contemplation of Congress.”
The very able State’s attorney placed reliance upon Valentino v State of New York (44 AD2d 338), as support for the day of injury theory. He quoted from page 340 of said decision in his memorandum: "It is now well settled that a defendant’s right to contribution from another 'for his proportionate share of the total damages is no longer merely inchoate prior to entry of a joint judgment against them and its payment by him’ and that his right to an adjudication of this issue 'exists at the time the main action is tried’ (Stein v. Whitehead, 40 AD2d 89, 91-92).” The key phrase in that quote, as it relates to the claims at bar, was "exists at the time the main action is tried”. The Valentino decision involved the question of a State counterclaim in the main action; and, the Stein decision involved the question of a defendant’s right to have a co-defendant’s pro rata liability and damages determined in the main action. Neither of these decisions was concerned with a separate and independent action for contribution which stemmed from the main action. In respect to such a situation the Stein decision stated at page 91: "Alternatively, if all have not been sued and the one sued has paid the full amount of the plaintiff's damages he can bring an independent action against the other tortfeasors to recover from them their fair shares of the damages and in that independent action the court or jury will determine the proportions of the parties’ liability for the damages.” (Emphasis added.) The reasoning underlying the distinction between the right to apportionment and contribution in the main action and the right in the stemming independent action was clearly stated by Judge Jasen in his dissenting opinion to Slater v American Min. Spirits Co. (33 NY2d 443, 449): "Dole creates a substantive right to apportionment of damages among joint or concurrent tort-feasors without regard to the degree or nature of fault, in effect, a cause of action for indemnification where none existed before *976 * * * But the cause of action does not accrue until payment of the judgment * * * Impleader is merely the procedural vehicle by which a cause of action for indemnification may be asserted before it actually accrues. But the third-party complaint has no independent existence apart from the prime action * * * Its purpose is to merely avoid circuity of action and multiplicity of lawsuits and to encourage economic and expeditious determination of all claims at one time.”
When related to separate and independent actions for contribution, neither Dole v Dow Chem. Co. (30 NY2d 143, supra) nor CPLR 1401, which sought to codify and clarify the rule of Dole, changed "The general rule * * * that the action accrues not at the time of the commission of the tort for .which indemnity is sought, but at the time of the payment of the judgment”. (Musco v Conte, 22 AD2d 121, 125-126; see, also, Tarantola v Williams, 48 AD2d 552, 555; Winn v Peter Bratti Assoc., 80 Misc 2d 756, 758; Adams v Lindsay, 77 Misc 2d 824; Wattecamps v Artkraft Strauss Sign Corp., 75 Misc 2d 934, 936; Rozell, Contribution Among Joint Tortfeasors, 52 Cornell LQ 407, 414, 415; Brunner, When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort, 57 ALR3d 867 and What Statute of Limitations Applies to Action for Contribution Against Joint Tortfeasor, 57 ALR 3d 927.)
Having determined that the date of injury does not trigger the six months’ Statute of Limitations in a separate and independent contribution claim against the State of New York, the remaining question is, when does the contribution cause of action or claim accrue? This question has not been specifically resolved by the appellate courts. In Matter of Valstrey Serv. Corp. v Board of Elections, Nassau County (2 NY2d 413, 415-416), it was stated:
"The brief for the county upon this appeal concedes that Valstrey’s cause of action, if any, against the county does not accrue until Valstrey is cast in judgment by a verdict in favor of the injured plaintiff. It is conceded that not until then could Valstrey’s claim arise against the county.
"Whether such a claim would arise upon the entry or payment of a judgment against Valstrey, it is plain from the language of both section 52 of the County Law and of section 50-e of the General Municipal Law that no filing of claim by Valstrey against the county is required in order to maintain the third-narty action.” (Emphasis added.) Judge De Iorio, in *977 a well-reasoned and cogent decision, O’Sullivan v State of New York (83 Misc 2d 426, supra), concluded that the claim accrued upon the date that judgment was entered in the core action. I have carefully considered the O’Sullivan decision; the study of Professor M. E. Occhialino on contribution (Nineteenth Annual Report of NY Judicial Conference, 1974, p 217 et seq.); and, the commentary in the Twentieth Annual Report of the New York Judicial Conference (1975, p 213, et seq.). I am also fully aware that the time lag, which may have to be endured under the payment of judgment rule, could be substantially greater than the delay under the entry of judgment rule. However, in my opinion, this is a problem for the Legislature to rectify and, as I read CPLR 1402, I do not discern a desire on that body’s part to change the accrual date of a contribution claim from date of payment to date of entry of judgment. As Dean Joseph M. McLaughlin stated: "Although the equitable shares of liability are allocated in the basic lawsuit, the right of contribution does not arise until one of the defendants has actually paid more than his equitable share. This accords with well-established precedents.” (McKinney’s Cons Laws of NY, Book 7B, CPLR 1402, p 213). In my opinion, until the "right of contribution” arises, the claim against the State does not accrue; and, I do not believe the decision of Bronxville Palmer v State of New York (36 AD2d 647) militates against that conclusion. (See Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34, supra.)
Judge De Iorio also referred to Valentino v State of New York (44 AD2d 338, supra), and Bartlett v State of New York (40 AD2d 267), to support his conclusion that payment of a judgment is not a jurisdictional prerequisite.” (O’Sullivan v State of New York, 83 Misc 2d 426, 437-438, supra.) I have already pointed out that Valentino was a main or core action (as was Bartlett) and not an independent stemming contribution action as were the claims at bar.
The notice of intention in Claim No. 57769 was filed and served within six months of payment in full of the settlement and the claim was filed and served within two years of the date it accrued. As the settlement occurred after the effective date of Dole (cf. Codling v Paglia, 32 NY2d 330, 344, supra) and before the amendment of General Obligations Law (§ 15-108, subds [b], [c]), this claim was properly before the court. (See Tarantola v Williams, 48 AD2d 552, supra; Hain v Hewlett Arcade 40 AD2d 991; and, Board of Educ. of Cent. *978 School Dist. No. 1 v Homer, 80 Misc 2d 339, 341.) The State’s motion to dismiss Claim No. 57769 for untimely filing, upon which decision had been reserved, is denied.
Claim No. 57264 (Berlin & Jones, Inc.) was filed and served on January 15, 1973 approximately one and one-half years prior to the date upon which the claim accrued. This filing must be considered a nullity and, therefore, without power to confer jurisdiction upon the court. I do not consider that I can apply the prospective filing rule of Atlantic Mut. Ins. Co. v State of New York (50 AD2d 356, supra) and Matter of Johnson v State of New York (49 AD2d 136, supra), to the fact situation at bar. It might be possible to consider the notice of claim as a prospective notice of intention (cf. Chalmers & Son v State of New York, 271 App Div 699, affd without opn 297 NY 690); but, as a claim was not filed after it accrued, such would be a futile gesture for I certainly could not consider that the same filed paper fulfilled the functions of both the notice of intention before the claim accrued and the claim after it accrued.
Claimant’s counsel in Claim No. 57264 (Berlin & Jones, Inc.) drew my attention to Matter of Valstrey Serv. Corp. v Board of Elections, Nassau County (2 NY2d 413, supra) and Accredited Demolition Constr. Corp. v City of Yonkers (37 AD2d 708). The Valstrey decision held that it was not necessary to comply with the notice provision of section 50-e of the General Municipal Law in a third-party action against a municipality. It pointed out that to hold otherwise would be to destroy the efficacy of the impleader section when applied to municipalities or other public corporations. The Accredited decision related to a separate action for contribution against a municipality which had been a party defendant in the principal action. The municipality raised the defense of failure to file a notice of claim pursuant to section 50-e of the General Municipal Law. The court held that the separate indemnification action was equitable in nature and "that where an action is grounded upon equitable principles there need be no compliance with section 50-e of the General Municipal Law”. It should be noted that this municipal defendant had a plethora of notice in the principal claim and to require more notice in the stemming claim would indeed be anomalous. (Accredited Demolition Constr. Corp. v City of Yonkers, 37 AD2d 708, 709, supra.)
The State, of course, cannot be brought into an action for *979 damages in any court other than the Court of Claims (Court of Claims Act, § 8) and the only way that a claim can be brought against the State is to follow the procedure' detailed in section 10 of the Court of Claims Act. The notice of intention in the Court of Claims has been equated with the notice of claim under section 50-e of the General Municipal Law (Matter of Johnson v State of New York, 49 AD2d 136, 138, supra). However, that decision did not change the requirement that the claim itself has to be filed and served within the jurisdictional time limitations of section 10. (See Davis v State of New York, 22 AD2d 733.) Obviously, the Valstrey and Accredited decisions do not apply to claims against the State of New York.
The State’s motion for dismissal of Claim No. 57264 for failure to comply with the temporal jurisdictional requirements of subdivision 4 of section 10 of the Court of Claims Act was predicated upon an incorrect theory. However, such was not a fatal defect. This is a jurisdictional problem and, regardless of theory, once it was established that I did not have jurisdiction, on whatever theory, the claim had to be dismissed. I reserved decision upon the State’s motion. The motion is now granted and Claim No. 57264 is dismissed.
It should be noted that, if the motion to dismiss for untimely filing under subdivision 4 of section 10 of the Court of Claims Act had been made by the State within a reasonable time after the claim was filed, the jurisdictional problem might possibly have been cured; and, the Trial Judge would then have been concerned only with the questions of liability and, in the situation at bar, of contribution, if liability was resolved in claimants’ favor. Of course, as the Statutes of Limitation set forth in section 10 of the Court of Claims Act are jurisdictional in nature, they may be raised initially at any time and at any level of our judicial system. Many of our Judges have noted the predilection of the State Attorneys-General to raise the question at or about the end of trial when it is too late for the situation to be rectified. Whether this is done at the discretion of the individual Assistant Attorney-General or in compliance with office policy is not known. I realize these are adversary proceedings but to hold this time bomb in close reserve during extensive and expensive trial preparation and lengthy and expensive trials is, in my opinion, an unfortunate practice. The Court of Appeals in Bender v New York City Health and Hosps. Corp. (38 NY2d 662, 668) *980 stated: "our court has never specifically adopted the doctrine of estoppel in the notice of claim area * * * We do so today.” That decision related to the notice of claim required by section 50-e of the General Municipal Law. If the Bender rule could be extended to section 10 of the Court of Claims Act, it would have a salutory effect upon the true balance of justice in this court.
(Additional material omitted from publication.)